On the Merits.
The Opinion of the court was delivered by
Manning, C. J.
The brief of neither counsel places before us the order and date of events, which facilitate the decision of this case, in that regular sequence which at a glance gives a comprehension of the question at issue. The property was acquired, alienated, and mortgaged thus
Eortwendel acquired it in 1818, and sold it to Courcelle in 1865, and Courcelle sold to Marie Meir in 1867, and Marie mortgaged it to Clay in 1872, and Belot bought it in May 1878
under that mortgage, and at its foreclosure, having become the owner of the mortgage note, and himself being the actor in the executory process which forced the sale, and the purchaser at the sale.
Eortwendel mortgaged it to Testart in 1876, and Testart bought it in March 1878
under that mortgage, and at its foreclosure.
„ Testart, the plaintiff, thus acquired it under a mortgage from Eortwendel, given in 1876, eleven years after he had sold it to Courcelle, and Belot, the defendant, acquired it by a chain of title from Courcelle. Prima facie, that statement would settle the dispute.
This action was instituted, pending the executory process of Belot, to arrest that sale, and to have Eortwendel’s sale to Courcelle, and the latter’s to Marie Meir, declared simulations and of no effect, the plaintiff averring that Marie Meir was Eortwendell’s wife, who could neither acquire nor mortgage without his authorization, and besides, that the mortgage was obtained from her by Clay through fraudulent misrepresentations.
The marriage, if ever there were any, was not only carefully concealed, but Eprtwendell had ostentatiously described himself as unmarried in the sale to Courcelle, and the latter, two years after, in his sale to Marje, with imitative particularity, uses the prefix to her name which belongs to her as a spinster. It was not until January 1878, when Belot was about to foreclose the mortgage given to Clay, of which he had become owner by the acquisition of, the note which it secured, that Eortwendell and Marie appear in legal proceedings as man and wife. *797 They sued out together an injunction, alleging that they were married before Courcelle’s sale to her, and the property was therefore community, and the wife’s mortgage without authorization was nothing worth, and the noté which it secured was valueless.
But it was proved bn the trial of that case that Olay was the executor of Courcelle, and found the note among his effects, and called ott both Eortwendell and Marie Meir for payment, for it seems there were some sort of relations between them. Clay as a broker enabled the lady to borrow money to take up that note, and shé gave a new one with mortgage, and it was this last note that Belot acquired; But before this was done, Eortwendell himself paid the interest for successive years on this note, never hinting that the note was valueless because it had not his signature authorizing his wife (thén unclaimed) to sign, nor intimating that the connection between himself and the signatory of the note was other than voluntary, and unsanctioned by the laws of the Church or State. On the contrary he always spoke to Belot (and the native tongue of both is French) of Marie as la femme.
The result of that trial was that our learned brother, who heard the case, measuring the turpitude of these people by that standard which morals and law alike prescribe, wouid not listen to them, while alleging that a marriage invalidated acts which they had done to obtain money, pretending and asserting all the while that they were unmarried; and turned them out of court without delay.
The present plaintiff also seeks to annuli the sale from Eortwendell to Courcelle, and all subsequent transfers and mortgages of Courcelle’s vendee, on the ground of simulation. He avers that the real title was in Eortwendell when the latter gave him the mortgage he is seeking to enforce, and all the Acts which put the apparent title in others are simulations, and void as against him. While therefore it is true that Eortwendell cannot be heard, while setting up the simulation of his conveyance to Courcelle, and cannot be permitted to assail the verity of that conveyance by parol testimony, but only by a counter letter — his creditor is not hampered by the same restriction. A party who has made a simulated sale of property has his own negligence to blame if he omits to take a counter letter, and therefore where land was 'alleged to have been conveyed for the purpose of giving the vendee an apparent title to enable him to recover in a petitory action, and no price was really paid, it was held the stipulation as to the nature and purpose of the conveyance could not be shewn by the party who made the sale except by a counter letter. Delahoussaye v. Davis, 19 La. 409.
Not so with the creditor of such party. Nouvet v. Vitry, 15 Annual, 653. If Testart can shew that all these transactions are simulations, he is at liberty to do so, and by parol testimony. Obviously that is the *798 only kind o£ testimony he could obtain, or would be likely to have at hand, to make such proof, and to hold that a creditor is barred from making such proof, and can only avail himself of a counter letter, which his debtor might purposely have omitted to take, would be to put in his way an obstruction to the enforcement of his rights, which the debtor may have designedly supplied.
But to enable the plaintiff to do this against Belot, he must have alleged the latter’s want of good faith, and the absence of innocence and reality in the debt which he is urging, for it must be observed that even if the whole of the conveyances and mortgages under which Belot holds were simulations, he will not be affected by that fact if he is himself the innocent acquirer and holder of the note and mortgage of Marie Meir. In that case, if Testart and Belot have both been deceived, the former must suffer, since the latter in good faith had really acquired a note, secured by'a mortgage, executed by one who by the public records appeared to be owner of the property.'
The allegation is that Belot does not hold the note as his own — that “ it was passed to him'for the purpose of suing on the same.” In effect, this is an allegation that Belot is a person interposed to defeat the plaintiff’s claim, and has no real interest in, or ownership of the note and mortgage he has enforced. Proof should have been admitted on both sides to substantiate and to disprove this allegation. If Belot can disprove it, the mortgage he acquired will be good for his purposes, and Testart will be remediless, so far as concerns, the mortgage property.
The lower court refused to admit parol testimony, offered by the plaintiff, to shew the simulation of the whole series of Acts, by which an apparent title was vested in Marie Meir, and to shew Belot’s non-ownership of the note sued on by him, and his knowledge of and complicity with Fortwendell and.Mary Meir in their fraudulent transactions. The testimony should have been admitted. Therefore
It is ordered and decreed that the judgment of the lower court is avoided and reversed, and the cause is remanded for a new trial under the instructions contained herein, the appellee paying the costs of appeal.