**Mrs. Sarah Jennings CARTER, Appellant,**
**v.**
**UNITED STATES of America ex rel. DIRECTOR OF INTERNAL REVENUE, Appellee.**
**No. 25620.**

United States Court of Appeals
Fifth Circuit.
Aug. 13, 1968.

Joel B. Dickinson, Baton Rouge, La., for appellant.

Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Harry Marselli, Benjamin M. Parker, Crombie J. D. Garrett, Attys., Dept. of Justice, Washington, D. C., Louis LaCour, U. S. Atty., New Orleans, La., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and MITCHELL, District Judge.

MITCHELL, District Judge.

This is an appeal from a judgment of the district court, 273 F.Supp. 595 setting aside a preliminary injunction whereby the District Director of the Internal Revenue Service was enjoined from seizing and selling certain real property to satisfy unpaid, adjudicated federal income tax assessments against Hilton V. Carter.

The district court made a finding (with which we are in agreement) that on April 14, 1954, appellant, Sarah Jennings Carter and her husband, Hilton V. Carter, entered into a valid marriage contract in which they renounced the community of acquets and gains under the laws of the State of Louisiana. Thereafter, on April 17, 1954, they were married.

On June 11, 1955, appellant and her husband purchased certain immovable property located in the Parish of East Baton Rouge, Louisiana. This was a joint purchase, in the names of each, by authentic act.

More than six years later, on September 14, 1961, the Internal Revenue Service filed income tax liens in the amount of $102,918.69 against Hilton V. Carter for the years 1948–53, inclusive.

On October 4, 1963, Hilton V. Carter executed an act of donation inter vivos by which he donated to appellant all of his interest in the immovable property which he and appellant had jointly purchased on June 11, 1955.

On January 23, 1964, the Internal Revenue Service caused the aforementioned property to be seized to satisfy its tax liens against appellant's husband.

Appellant sought to enjoin the seizure and sale of the property on the grounds that she owned an undivided one-half interest therein; that it was exempt from seizure and sale due to the execution of the "declaration of homestead"; that her husband had donated to her all of his interest therein by the aforementioned act of donation inter vivos; and, finally, that it was her separate property.

The district court found that appellant had failed to prove by a preponderance of the evidence that the property had been purchased with her separate funds and thus it, as a whole, did not constitute her separate property. We concur.

The record indicates that appellant was her own worst enemy.

■ The district court's holding in regard to the act of donation inter vivos

of her husband's interest in the property to appellant is clearly correct. It was nothing more than an attempt to transfer the property to appellant to avoid the government's tax lien. Such a transfer could only be made subject to the lien holder's rights against the property, and the government's lien had attached some two years prior to execution of the act of donation.[1]

The district court also held that the Louisiana homestead exemption laws are not effective against federal tax liens[2] and, thus, the filing of the homestead exemption by appellant and her husband did not affect or destroy the validity of the government's tax lien.[3] We concur.

We find fault with the district court only on a single, but crucial, point: whether or not appellant owns an undivided one-half interest in the property, free of any tax liens asserted by the government.

The district court apparently failed to give effect to the fact that when the property was purchased, jointly in the names of appellant and her husband, by authentic act, an undivided one-half interest was conveyed to each party. The court allowed an authentic act to be collaterally attacked by evidence, dehors the authentic act,[4] contrary to the law of Louisiana.[5] However, a donation inter vivos of cash can be validly effected under Louisiana law by mere delivery of the cash by the donor to the donee. Thus, even though the down payment of $10,000 was made from her husband's separate and paraphernal funds by means of a check drawn on his personal account, such nevertheless constituted a manual donation of cash by her husband to appellant for the purchase of her share of the property. Additionally, since the purchase was by authentic act, the latter, in itself, constituted a valid donation inter vivos meeting the procedural requirements of Article 1536 of the Louisiana Civil Code.

The mere fact that plaintiff and her husband had entered into a marriage contract which precluded creation of a community of acquets and gains between them did not preclude donations inter vivos between them. Further, since the property was jointly purchased by appellant and her husband at a time unsuspicious, as concerns the tax liens, i. e., more than six years before they were filed and/or recorded against appellant's husband, the Internal Revenue Service cannot now question the validity of the authentic act by which the property was jointly acquired by appellant and her husband.

Article 2236 of the Louisiana Civil Code provides that:

"The authentic act is full proof of the agreement contained in it, against (between) the contracting parties and their heirs or assigns unless it be declared and proved a forgery."

This rule has been followed consistently by the Supreme Court of Louisiana. In Hoffmann v. Ackermann,[6] the Court, in declining to disturb the title to certain real property allegedly placed in a

1. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958); United States v. Leventhal, 114 U.S.App.D.C. 340, 316 F.2d 341 (1963); Seaboard Surety Company v. United States, 306 F. 2d 855 (CA 9–1962).

2. The Supreme Court of Louisiana has specifically held that the Louisiana homestead exemption act is not effective against a federal income tax lien. Harvey v. Thomas, 239 La. 510, 119 So.2d 446 (1960).

3. United States v. Heasley, 283 F.2d 422 (CA 8–1960); United States v. Heffron, 158 F.2d 657 (CA 9–1947), cert. den. 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845; Shambaugh v. Scofield, 132 F.2d 345 (CA 5–1942).

4. Answers to written interrogatories.

5. Louisiana Civil Code, Art. 2276; Reconstruction Finance Corporation v. Holloway, 191 La. 583, 186 So. 35 (1939).

6. 110 La. 1070, 35 So. 293 (1903).

third party's name to put it beyond the reach of the debtor's creditors, noted:

"The rule is that parol evidence is inadmissible to affect title to real estate * * *.

"The rule is not without its exceptions and among them are the familiar examples where a creditor seeks by the revocatory action * * * to bring back into the estate of the debtor property which the debtor has fraudulently transferred; *but this court has steadily refused to recognize as an exception to the rule the case where the purpose is to bring into the estate of the debtor real estate that has never formed any part of it.*" (emphasis added)

See also Eberle v. Eberle,[7] wherein the court held that forced heirs could not show by parol evidence that their mother was the owner of certain property and stated:

"* * * a forced heir may attack by parol a transfer made by his ancestor, for the purpose of showing that it was a simulation, in order to bring the property back into his ancestor's succession or to recover it for himself, but he cannot use parol evidence to bring into the succession or recover property, which under no form of title recognized by law ever belonged to his ancestor or to his ancestor's succession."

A fortiori, as an undivided one-half interest in the property was owned by the appellant, separate and apart from her husband, the defendant cannot now attempt to seize and sell this interest on the theory that it comprises part of the husband's separate estate. The defendant is precluded from asserting title to property allegedly in the estate of the debtor husband when that property never formed part of his estate. The undivided one-half interest of the appellant is, therefore, immune from seizure and sale by the defendant.

The judgment is reversed in part and the case is remanded for further proceedings not inconsistent with this opinion.

---

7. 161 La. 313, 108 So. 549 (1926).