HOOD, Judge.
This is an action to recover benefits under a decreasing term life insurance policy issued by defendant, naming Ray Thomas Clark as the insured and plaintiff as the beneficiary. Judgment was rendered by the trial court in favor of defendant, and plaintiff has appealed.
*498 The issue presented is whether the insured, now deceased, gave false information in his application for insurance, with the result that the policy is unenforceable except for the return of premiums paid.
On May 6, 1969, a life insurance policy was issued by defendant, National Old Line Insurance Company, insuring the life of the decedent, Clark, and naming plaintiff, First Federal Savings & Loan Asso>-ciation, as the beneficiary. The purpose of the policy was to insure payment of the balance due on a mortgage indebtedness owed by Clark to plaintiff, in the event of the insured’s death.
The insured, Clark, died on June 23, 1970, at a time when the balance due on the insured loan was $16,097.94. The immediate cause of his death was “Coronary Occlusion,” and the contributory cause of death was “Chronic Coronary Disease.” Plaintiff’s claim for benefits under the policy was rejected by the defendant insurer, and this suit was instituted.
Defendant resisted payment of plaintiff’s claim on the ground that the insured made false statements in his application for the insurance, that such statements were material to the acceptance of the risk, that they were made with actual intent to deceive, and that they were relied on by the insurer in issuing the insurance policy.
On March 27, 1969, Clark submitted an application to defendant for decreasing term life insurance on his life, in the amount of $16,500.00, naming plaintiff as the beneficiary. In that application he answered “No” to each of the following questions:
3. Have you ever had high blood pressure, a cancer, a tumor, a hernia, an ulcer, any nervous disorder, any disease or disorder of the kidney, stomach, heart, lung, intestines, liver, gall bladder, or spleen ?
4. Do you know of any impairment, disease or disorder now existing in your health or physical condition ?
5.Have you consulted a physician for any illness during the last five years?
Upon receipt of that application defendant asked Clark to submit to a physical examination by a doctor of his choice, and they furnished him with a form to be completed by the examining physician. Clark was examined by Dr. J. A. Thomas on April 26, 1969, and a report of that examination on the form which had been furnished, signed by Clark and Dr. Thomas, was returned to defendant. On that form the parties answered “No” to the following question:
“To the best of your knowledge and belief do you have, or have you ever had, or been treated for: * * * (d) chest pain, high blood pressure, murmur, heart attack, or other disorder of the heart or blood vessels?”
Dr. Thomas testified that he propounded the last mentioned question to Clark, and that Clark informed him that he had never had any chest pain, heart attack or other disorder of the heart or blood vessels. He stated that the answer to that question, as it appears on the report, was given on the basis of the history which he received from Clark.
The evidence shows that Clark sustained a heart attack on April 24, 1967, that he was hospitalized from that date until April 27, 1967, and that he was treated for that heart attack by Dr. R. R. Sills. He left the hospital on the last mentioned date against the advice of his treating physician. Dr. Sills diagnosed Clark’s condition as an “acute infarction,” with muscle damage to the heart. He stated that he informed Clark and his wife that Clark had sustained a heart attack, with heart damage, and that he advised a longer period of hospitalization. Mrs. Clark conceded that Dr. Sills had advised her that her husband was hospitalized with a heart condition or heart pain, and that Clark left the hospital after the third day against the advice of his treating physician.
*499 The appropriate official of defendant company testified that the insurer received Clark’s application and the medical report submitted by Dr. Thomas, and that the policy was issued on the basis of the information contained in those documents. He testified that the company would not have issued the policy if it had known that Clark had been treated for a heart condition in 1967.
An insurer cannot avoid liability on a life insurance policy on the ground that false statements were made in the application, unless the insurer establishes that the false statements were made with actual intent to deceive, that such statements materially affected the acceptance of the risk or the hazard assumed by the insurer, and that the insurer relied on those statements in determining that the policy should be issued. Where the insurer asserts a special defense of this kind, the burden of proof rests on the insurer to establish both the materiality of the false statements and an actual intent to deceive. LSA-R.S. 22:619; Fruge v. Woodmen of World Life Insurance Society, 170 So.2d 539 (La.App. 3 Cir. 1965); Taylor v. Interstate Life and Accident Insurance Company, 169 So.2d 249 (La.App. 1 Cir. 1964).
The evidence in this case shows that immediately before and after the 1967 heart attack, Clark worked as a tool pusher or driller in oil field work. He was active and industrious, and he returned to work as a driller four days after he left the hospital in April, 1967, contrary to the advice of his treating physician. He worked regularly from that time until his death.
About the time he applied to defendant for credit life insurance he was offered a job as a driller by Loffland Brothers Company, but it was necessary for him to submit to and pass a physical examination before he could obtain that job or before he could obtain the insurance coverage he wanted. Dr. Thomas gave him the physical examination for both purposes on the same day. Clark would have had little chance of obtaining either the insurance coverage or the new job if he failed these physical examinations, so there were some compelling reasons for him to conceal the fact that he had had a heart attack and had been treated for a heart condition two years earlier. We are convinced that when he applied for the insurance coverage and when he was examined by Dr. Thomas he was aware of the fact that he had had a heart attack or heart disease in April, 1967, and that he deliberately concealed that fact in his application for insurance and in the history which he gave to the examining physician.
Our conclusion is that the insured, Clark, gave false statements in the application which he submitted to defendant for insurance, that these false statements were made with actual intent to deceive, that the facts mistated were material to the acceptance of the risk by defendant, and that defendant relied upon those statements. Under those circumstances, we cannot say that the trial judge erred in holding that the policy issued by defendant insuring Clark’s life was void and unenforceable.
Plaintiff argues further, however, that the trial judge erred in allowing the defendant to introduce evidence tending to show fraud, and in considering the evidence which was introduced to that effect. He also contends that the trial judge erred in permitting defendant to amend its answer after the case had been tried on its merits.
In the answer filed by defendant on November 13, 1970, it alleged:
“6. Further answering plaintiff’s petition, your defendant specifically shows and sets up as a special defense to this proceeding, the fact that the insured under the policy, Ray Thomas Clark, gave false information in his application for insurance, which false information was material to the acceptance of the risk by the insurer, and that the giving of this false information was with the intention to deceive the insurer, and, *500 therefore, under the laws of the State of Louisiana as interpreted by the courts of the State of Louisiana, your defendant is entitled to not pay the proceeds of the policy upon the death of the insured, due to the false application and the reliance on the false application by the insurer.”
The case was tried on March 5, 1971. At the trial plaintiff objected to any evidence tending to show fraud on the part of the insured, basing that objection on the ground that the special defense of fraud had not been pleaded with particularity by defendant, as required by LSA-C.C.P. art. 856. The trial judge observed that the defendant had pleaded only “conclusions,” and that “no facts are alleged which form the basis of fraud.” He then ruled that the evidence tending to show fraud was not admissible and would not be considered by him, but that he nevertheless would permit the evidence to be introduced for the benefit of the appellate court in the event an appeal should be taken. The evidence tending to show fraud thus is in the record.
At the conclusion of the trial the trial judge took the case under advisement and allowed the parties a period of time within which to submit written briefs. On March 31, 1971, after the case had been taken under advisement and before judgment was rendered, defendant filed an “Amending Answer,” which purported to amend its original answer by setting out with particularity the false information which had been given by Clark in the application for insurance and in the report of the physical examination for that insurance. A rule was issued by the trial court on March 31 directing plaintiff to show cause why the amending answer should not be filed, and a contradictory hearing was held on that rule on April 6. Judgment was rendered on April 19, 1971, authorizing the filing of the amended answer. Judgment on the merits then was rendered on May 6, 1971, and it is apparent from that judgment that the trial judge considered the evidence which was in the record relating to fraud. Plaintiff contends that the trial judge erred in considering this evidence.
We think the evidence relating to fraud was properly considered by the trial court for several reasons. First, we believe that the trial court erred in its original observation that the allegations contained in Article 6 of defendant’s answer were mere conclusions. In that article it is alleged that Clark “gave false information in his application for insurance,” that this “false information was material to the acceptance of the risk by the insurer,” and that “the giving of this false information was with the intent to deceive the insurer.” In all of these allegations the defendant • asserts facts which, if proved, are sufficient to support its special defense of fraud. Second, although the defendant has not alleged with much particularity the facts on which it bases its special defense of fraud, it has alleged sufficient facts to permit the introduction of evidence to support those allegations, and the record shows that plaintiff was fully apprised of the nature of the defense before the case came up for trial on its merits. The depositions of Dr. Thomas and of Dr. Sills were taken on January 6, 1971, approximately two months before the case came up for trial. Counsel for plaintiff was present when both of those depositions were taken. Each doctor was questioned about Clark’s heart attack in 1967 and about the answers which Clark gave in his application for insurance and in the history which he gave to Dr. Thomas. The application for insurance which Clark had signed was presented to both doctors when their depositions were being taken, and they were questioned about the answers which the applicant had given. The physical examination report which had been signed by Clark and by Dr. Thomas was presented to the latter, and he was interrogated as to the answers which Clark had given in response to questions appearing on that form. From the allegations contained in defendant’s original answer and from these dep *501 ositions, therefore, plaintiff was fully apprised of the factual basis alleged and relied upon by defendant to support its special defense. Plaintiff thus was not taken by surprise, and we find that it was not subjected to any injustice by the admission of evidence relating to fraud on the part of Clark.
Insofar as the record shows, plaintiff has never asked that the case be reopened, or that it be remanded to permit the introduction of additional evidence tending to offset defendant’s special defense of fraud. We would be inclined to remand the case if there had been a showing that plaintiff was prejudiced in any way by defendant’s failure to allege fraud with more particularity. There has been no such showing, however, and no request has been made for a remand.
We are aware of the requirement in our law that in pleading the special defense of fraud, the circumstances constituting such fraud must be alleged with particularity. See LSA-C.C.P. arts. 856 and 1005; Hartsfield v. Green, 62 So.2d 180 (La.App. 2 Cir. 1952); Rozas v. Evangeline Parish Police Jury, 214 So.2d 398 (La.App. 3 Cir. 1968); Loeb v. Badalamenti, 192 So.2d 246 (La.App. 4 Cir. 1966). In the instant suit, we think the allegations contained in defendant’s original answer, together with the information elicited from witnesses in depositions taken prior to the trial, satisfy these requiremens.
Since we have concluded that evidence of fraud was properly admitted and considered under the original allegations contained in the answer, it is unecessary for us to consider the question of whether the court erred in permitting the amended answer to be filed.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.