BOUTALL, Judge.
This is a suit by Mrs. Annie Bell Page, the beneficiary under an insurance policy on the life of her son Albert Z. James, deceased, to recover death benefits. After trial on the merits, the trial court dismissed plaintiff’s suit and she prosecutes this appeal.
The policy is a whole life industrial policy in the amount of $1,000.00 with weekly premiums of per week. Mrs. Page applied for the policy on November 3, 1970 and the policy was issued on November 16, 1970. Her son, the insured, died on December 10, 1970. The insurer has refused to pay the death benefits under the policy, but has simply returned the premiums. This refusal is based upon fraudulent misrepresentations in the application for the policy, and upon the policy provisions which read as follows:
“CONDITIONS AND AGREEMENTS
“PRELIMINARY PROVISIONS If the insured is not alive on the Date of Issue of this policy, or within two years prior to said date has been rejected for life insurance by this or any other insurer, and knowledge of such rejection by the Company would have led to a refusal *189 to issue this policy, or has received institutional, hospital, medical, or surgical treatment or attention, and the insured or any claimant under this policy fails to show that the condition occasioning such treatment or attention was not of a serious nature, or was not material to the risk, this policy shall, subject to the incontestability provision, be voidable by the Company either before or after any claim, unless reference to such treatment or attention, or such prior rejection, is endorsed on this policy by the Company; provided, however, that this policy shall not be voidable because of absence of endorsement referring to any information which was disclosed in a written application for this policy. If this policy is voided by the Company, the Company’s liability shall be limited to an amount equal to all premiums paid, without interest.”
The facts reveal that Mrs. Page had brought her son Albert to the Washington-St. Tammany Parish Charity Hospital on November 1, 1970, with complaints of headache, dizziness, disorientation and confusion with blood pressure of 210/130, and that his condition was diagnosed as hypertensive encephalopathy. Thus, at the time of the application, the applicant was well aware that the proposed insured was in the hospital for a serious condition, (and which ultimately caused his death) and did not make disclosure of this upon the application. It is noted that as soon as he was placed in the hospital, he went into periods of alternating coma and lucid intervals which certainly must have been known by her.
In any event, the patient did not respond to treatment, and so on the 14th day of November, 1970, he was transferred to Charity Hospital in New Orleans where he died. The death certificate reveals that the immediate cause of death was cardio respiratory arrest, as a consequence of respiratory arrest which was a consequence of subarachnoid hemorrhage, which was ultimately due to hypertension. According to Dr. T. Sterling Dunn, who is Board certified in the field of internal medicine, the hypertension which is shown by the hospital records to have been present for at least six months prior to death was the basic underlying cause of death. There is no doubt that the treatment under which the insured was going at the time of the application of the policy was both of a serious nature and material to the risk, and it is apparent that no insurance company would have issued a policy had it known of the decedent’s hospitalization and his physical condition.
The trial judge gave no written reasons for his judgment of dismissal, and it is equally possible that the judgment could have been based upon fraudulent misrepresentations or failure to disclose the pertinent information required under the preliminary provisions of the policy quoted above. We affirm his decision under either hypothesis. Certainly, the failure by the applicant to disclose that the prospective insured was actually in the hospital for treatment of a serious condition, and one which ultimately caused his death while in the hospital less than a month after the policy was issued, falls within the quoted provisions and causes the policy to be voidable. Additionally, the facts clearly establish that the applicant was well aware of the hospitalization of the proposed insured, and knew of his condition, and we can only conclude that her failure to report these facts constitutes fraudulent misrepresentation. See First Federal Savings & Loan Ass’n v. National Old Line Insurance Company, 254 So.2d 497 (La.App. 3rd Cir. 1971).
For the foregoing reasons, we affirm the judgment appealed from at appellant’s costs.
Affirmed.